IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER G. GALLAGHER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  20-5701 |
| Commissioner of Social Security[1] | : | |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                    January 31, 2022

        Christopher G. Gallagher ("Plaintiff") seeks review of the Commissioner's

decision denying his application for disability insurance benefits ("DIB").  For the

reasons that follow, I conclude that the decision of the Administrative Law Judge

("ALJ") is not supported by substantial evidence and remand for further proceedings

pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY

        Plaintiff filed for DIB on October 3, 2018, alleging that his disability began on

December 27, 2017, as a result of torn ligaments in the left thumb and pointer finger,

limited mobility/use of the left hand, irregular heartbeat, high blood pressure, high

cholesterol, hypothyroidism, and gastroesophageal reflux disease ("GERD").  Tr. at 69,

---

        [1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,
2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi
should be substituted for the former Commissioner of Social Security, Andrew Saul, as
the defendant in this action.  No further action need be taken to continue this suit
pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

71, 188-89, 216.[2]  Plaintiff's application was denied initially, id. at 84, and on

reconsideration, id. at 89, after which Plaintiff requested a hearing before an ALJ.  Id. at

92.  After holding a hearing on February 24, 2020, id. at 31-56, the ALJ found on March

16, 2020, that Plaintiff was not disabled.  Id. at 15-23.  The Appeals Council denied

Plaintiff's request for review on September 22, 2020, id. at 1-3, making the ALJ's March

16, 2020 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.

 Plaintiff commenced this action in federal court on November 15, 2020, Doc. 1,

and the matter is now fully briefed and ripe for review.  Docs. 11, 14, and 15.[3]

## II.   <u>LEGAL STANDARD</u>

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.      Whether the claimant is currently engaged in
> substantial gainful activity;
>
> 2.      If not, whether the claimant has a "severe
> impairment" that significantly limits his physical or mental
> ability to perform basic work activities;

---

[2]To be entitled to DIB, Plaintiff must establish that he became disabled on or
before his date last insured, December 31, 2021.  Tr. at 57.

[3]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal
Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 7.

3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and

5.      If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R.

§ 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the

burden shifts to the Commissioner at the fifth step to establish that the claimant is capable

of performing other jobs in the local and national economies, in light of his age,

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88,

92 (3d Cir. 2007).

        The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusion that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552

(3d Cir. 2005)).  The court has plenary review of legal issues.  <u>Schaudeck</u>, 181 F.3d at 431.

## III.    <u>DISCUSSION</u>

### A.    <u>ALJ's Findings and Plaintiff's Claims</u>

The ALJ found that Plaintiff suffered from the severe impairments of trigger finger of the theft thumb, status post-release surgery; ruptured metacarpal phalangeal ("MP") ulnar collateral ligament of the left thumb,[4] status post-reconstruction with augmentation; degenerative joint disease ("DJD") of the left first metacarpal joint; and complex regional pain syndrome ("CRPS") type I of the left upper extremity.[5]  <u>Tr.</u> at 17. In addition, the ALJ found that Plaintiff suffers from the non-severe impairments of mild right carpal tunnel syndrome, hyperlipidemia, GERD, hypertension, hypothyroidism,

---

[4]The MP joint is "the knuckle" where the thumb meets the hand.  <u>See</u> https://www.ncbi.nlm.nih.gov/books/NBK538343/#:~:text=This%20multiaxial%20joint%20allows%20flexion,opposition%20and%20composite%20finger%20flexion. (last visited Dec. 22, 2021).

[5]CRPS, also referred to as Reflex Sympathetic Dystrophy Syndrome ("RSD") is a chronic pain syndrome most often resulting from trauma to a single extremity.  . . .   The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma.  Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone.  It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual.  When left untreated, the signs and symptoms of the disorder may worsen over time.

Social Security Ruling ("SSR") 03-2p, "Titles II and XVI:  Evaluating Cases Involving [RSD]/[CRPS]," 2003 WL 22399117, at *1 (Oct. 20, 2003).

irregular heartbeat, and obesity. <u>Id.</u> at 18. The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met the Listings, <u>id.</u>, and retained the RFC to perform light work with limitations to occasional handling, fingering, feeling, pushing and/or pulling with the left upper extremity; frequent balancing, stooping, kneeling, and crouching; occasional crawling; frequent climbing stairs and ramps; never climbing ladders, ropes, and scaffolds; and occasionally being exposed to vibrations, extreme cold, and extreme heat. <u>Id.</u> at 18-19. Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform his past relevant work as a contract specialist and sales representative. <u>Id.</u> at 22-23.

Plaintiff claims that the ALJ erred in failing to properly evaluate Plaintiff's CRPS in compliance with SSR 03-02p. Doc. 11 at 3-9.[6] Defendant responds that the ALJ correctly evaluated Plaintiff's CRPS using the criteria set forth in Ruling 03-02p as modified by subsequent legislation, regulations, court decisions, and rulings. Doc. 14 at 4-9.

**B.** **Plaintiff's Claimed Limitations**

Plaintiff was born on February 8, 1962, making him 56 years old at the time of his application and 58 years old at the time of the ALJ's decision. <u>Tr.</u> at 33, 188. He completed high school and worked as a sales representative for a bank supply company, a contract specialist for Verizon, and a warehouse worker for Amazon. <u>Id.</u> at 33-38.

---

[6]Other than the administrative record, for which I will utilize its own pagination, for pinpoint page references to documents filed in this court I will refer to the Court's ECF pagination.

At the administrative hearing, Plaintiff explained that the primary condition precluding him from working involved his left hand, specifically pain in his left hand that radiates up his arm, causes numbness, "convulsing of the hand," and burning and tingling, all of which "precludes me from doing anything, basically, with my left hand." Tr. at 38-39.[7]  The pain interferes with his sleep, causing daytime somnolence, which he described as "mentally and physically fatiguing."  Id. at 39.  Plaintiff explained that he has difficulties dressing and cannot button, zipper, turn doorknobs or open bottles.  Id. at 39-40.  As a result of the overuse of his right hand, he suffers from soreness and swelling of the right hand at times.  Id. at 41.  Due to the problems with his hand, Plaintiff limits his driving to 10-15 minutes, and the pain is distracting making it difficult to watch a 30-minute television program.  Id. at 42.  Although he accompanies his wife to do the grocery shopping, she puts the groceries in the cart and he tries to help by bringing the bags in from the car with his right hand.  Id. at 42-43.

**C.     Summary of the Medical Record**[8]

On December 27, 2017, Plaintiff fell at work, injuring his left hand and wrist.  Tr. at 1132.  An MRI performed on January 4, 2018, revealed mild degenerative change and "ligamentous laxity" in the first carpal metacarpal joint, a UCL tear or strain of the first

---

[7]Plaintiff is right hand dominant.  Tr. at 41.

[8]Because Plaintiff's claim involves only his CRPS, I will focus on the records relevant to the treatment, assessment, and limitations imposed by CRPS in Plaintiff's left hand.

metacarpal phalangeal joint, and a small enchondroma[9] in the third metacarpal head.  Id.
at 276.  Plaintiff began treating with James Sacco, D.O., on January 18, 2018.  Id. at
1132-35.  Dr. Sacco diagnosed Plaintiff with left thumb ulnar collateral ligament sprain
and mild arthritis at the carpometacarpal joint, and recommended that Plaintiff continue
with the splint and occupational therapy.  Id. at 1132.  Dr. Sacco noted that Plaintiff could
return to work, but could not use his left hand until a follow-up visit.  Id. at 1135.  On
February 15, 2018, Dr. Sacco diagnosed Plaintiff with a trigger thumb of the left hand
and continued the restriction to no use of the left hand at work.  Id. at 1126.  On March
15, 2018, Dr. Sacco performed a trigger finger steroid injection.  Id. at 1131.  The
following week, Dr. Sacco referred Plaintiff to orthopedist Kristofer Matullo, M.D.,
because Plaintiff's symptoms persisted.  Id. at 1118.

On April 9, 2018, in addition to pain in his thumb and wrist, Plaintiff complained
of locking and clicking of the thumb.  Tr. at 1112.  Dr. Matullo performed a small joint
arthrocentesis (joint aspiration), during which Plaintiff underwent a steroid injection of
the left thumb.  Id. at 1114-15.  On May 3, 2018, Dr. Matullo performed left thumb
trigger finger release surgery.  Id. at 1109.  On June 25, 2018, during a follow up visit,
Dr. Matullo noted that Plaintiff "reached good improvement" and could return to work
the following week with a 15-pound lifting restriction.  Id. at 1108.

---

[9]Enchondroma "is a type of noncancerous bone tumor that begins in cartilage."
See https://www.hopkinsmedicine.org/health/conditions-and-
diseases/enchondroma#:~:text=An%20enchondroma%20is%20a%20type,of%20cartilage
%20in%20the%20body. (last visited Dec. 28, 2021).

Although the report is not in the record, Randall W. Culp, M.D., of the Philadelphia Hand to Shoulder Center, conducted an Independent Medical Examination on August 7, 2018, related to Plaintiff's workers' compensation claim. See tr. at 408. Plaintiff followed up with Dr. Culp on November 12, 2018, complaining of continued pain and weakness in the left thumb. Id. 408-09. The doctor diagnosed Plaintiff with left thumb MP ulnar collateral ligament rupture and recommended repair of the ulnar collateral ligament. Id. at 409. On February 14, 2019, Dr. Culp noted "instability of the left thumb MP at 0 and 30 degrees flexion," and recommended surgical repair of the MP ulnar collateral ligament. Id. at 407, 936. On April 19, 2019, Dr. Culp performed left thumb MP ulnar collateral ligament reconstruction with local tissue and augmentation. Id. at 937-38. After the surgery, Plaintiff participated in physical therapy. On May 23, 2019, Plaintiff reported that "[m]y thumb is a lump of wood," and occupational therapist Jessy Gardner noted very limited range of motion but noted "sub maximal effort." Id. at 758. In June, Dr. Culp noted that Plaintiff was able to "oppose within 4 cm of the fifth metacarpal head," id. at 932, which he was unable to do two months later on August 1, 2019, when Dr. Culp noted a "mottled appearance" to the left hand, inability to move the thumb towards the fifth metacarpal, significant pain with motion, and Plaintiff's complaints of stiffness and swelling and color changes. Id. at 931. Dr. Culp diagnosed elements of CRPS and prescribed a Medrol Dosepak.[10] Id. On August 8, 2019, Dr. Culp

---

[10]Medrol Dosepak is a steroid used to treat many different inflammatory conditions including arthritis, lupus, psoriasis, ulcerative colitis, allergic disorders, gland disorders, and conditions that affect the skin, eyes, lungs, stomach, nervous system, or

noted a decrease in the "mottled appearance" and MP motion of 0-40 degrees, and

prescribed Elavil.[11]  Id. at 930.  On September 25, 2019, Dr. Culp noted MP motion of 0-

30, and a shininess to the left thumb, and referred Plaintiff to a pain specialist for

consideration of stellate ganglion blocks[12] for the continued pain, stiffness, and

numbness.  Id. at 929.[13]

On October 24, 2019. Christopher Connor, D.O., of Northeastern Rehabilitation

Associates noted that Plaintiff could not make a fist with his left hand, had discoloration

and shininess of the left hand, coolness of the left hand, and allodynia (nerve pain causing

sensitivity to touch).  Tr. at 944.  Dr. Connor diagnosed CRPS, left ulnar collateral

ligament rupture, status post-repair, and left thumb trigger finger, status post-repair.  Id.

He recommended physical therapy and referred Plaintiff to St. Luke's therapy near

Plaintiff's home in Easton.  Id.  The doctor also suggested consideration of stellate

ganglion blocks, and non-opioid analgesics (Gabapentin, Cymbalta, and Lyrica), and

blood cells.  See https://www.drugs.com/mtm/medrol-dosepak.html (last visited Dec. 28, 2021).

[11]Elavil is an antidepressant.  See https://www.drugs.com/elavil.html (last visited Dec. 28, 2021).

[12]The stellate ganglion is part of the sympathetic nervous system located in the neck.  A stellate ganglion block is an injection of medication into these nerves that can help relieve pain in the head, neck, upper arm, and upper chest, and is used to diagnose and treat nerve injuries including RSD and CRPS.  See https://my.clevelandclinic.org/health/treatments/17507-stellate-ganglion-block (last visited Dec. 28, 2021).  "The sympathetic nervous system regulates the body's involuntary physiological responses to stressful stimuli."  SSR 03-2p, 2003 WL 22399117, at *1.

[13]An EMG study ordered by Dr. Culp showed mild right-side carpal tunnel syndrome.  Tr. at 411.

spinal cord stimulation.  Id. at 944-45.  Dr. Connor found that Plaintiff has minimal use of his left hand and "will likely not be able to return to his normal job."  Id. at 945.

Plaintiff began treatment with the Bethlehem Pain Management Group on November 12, 2019, complaining of dull, aching, throbbing pain in the left thumb, hand, wrist, and lower arm.  Tr. at 1090.  Chiropractor Raymond Benedetto noted diagnoses of CRPS and postconcussional syndrome.  Id. at 1083.  Plaintiff underwent a series of low level laser therapy treatments in November and December, 2019.  Id. at 1084 (11/21/19), 1080 (11/25/19), 1077 (11/26/19), 1074-75 (12/3/19), 1071 (12/5/19), 1068-69 (12/10/19), 1065 (12/12/19).

At the initial determination stage, on May 10, 2019, Chankun Chung, M.D., found from a review of the records that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, noting limited ability to push or pull with the left arm, and handle, or finger with the left hand.  Tr. at 63-64.  On reconsideration, on June 16, 2019, Michael Lombard, M.D., concurred in Dr. Chung's limitations noted above.  Id. at 75-76.[14]

---

[14]Dr. Chung found that Plaintiff could occasionally climb ladders, ropes, and scaffolds.  Tr. at 63.  Dr. Lombard concluded that Plaintiff could never climb ladders, ropes, and scaffolds.  Id. at 76.  The ALJ determined that Dr. Lombard's opinion on this point was more persuasive than Dr. Chung's because "the diminution of fine motor functioning also reasonably limits [Plaintiff's] gross motor abilities[, rendering] any climbing of ladders, ropes, and scaffolds unsafe and/or impossible."  Id. at 21.  Additionally Dr. Lombard concluded that Plaintiff's impairments imposed environmental limitations, id. at 77, that Dr. Chung did not.  Id. at 64.

### D.   Plaintiff's Claim

Plaintiff argues that the ALJ failed to follow the guidelines set forth in SSR 03-2p, which address the evaluation of cases involving Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome.  SSR 03-02p, "Titles II and XVI:  Evaluating Cases Involving [RSD/CRPS]," 2003 WL 22399117 (Oct. 20, 2003).  Specifically, Plaintiff complains that the ALJ failed to properly consider the medical opinion evidence, citing a portion of the Ruling indicating that a treating physician's opinion may be entitled to controlling weight.  Doc. 11 at 7-8.  Defendant responds that the ALJ properly considered the opinion evidence under the current regulations.  Doc. 14 at 4-5.

At the time SSR 03-2p was issued, the governing regulation assigned weight to medical opinion evidence based on the relationship of the source to the claimant.  See 20 C.F.R. § 404.1527(c)(2) (controlling weight given to treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record).  The language of SSR 03-2p specifically relies on SSR 96-2p, "Titles II and XVI:  Giving Controlling Weight to Treating Source Medical Opinions," in addressing the consideration of medical opinions in RSD/CRPS claims.  SSR 03-2p, 2003 WL 22399117, at *5.  In 2017, the regulations regarding the evaluation of medical evidence were revised, eliminating the assignment of weight to any medical opinion for claims filed after March 27, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  SSR 96-2p was rescinded with the revisions to the regulations.  See SSR 96-2p, "Recission of Social Security Rulings 96-2p, 96-5p, and 06-3p," 2017 WL

11

3928297 (Apr. 6, 2017) (effective date March 26, 2017).  For claims filed on or after

March 27, 2017, the regulations now require the ALJ to evaluate the persuasiveness of

the medical opinions guided by several factors.  20 C.F.R. § 404.1520c(c).

Considering the revisions to the governing regulations and the rescission of the

ruling regarding the weight given to medical opinions upon which SSR 03-2p relied, the

fact that the ALJ did not evaluate the medical opinions using the old regulations does not

constitute an error.  However, the court is left to determine whether the ALJ's

consideration of the evidence ran afoul of the new regulations.

As noted, the new regulations focus on the persuasiveness of each medical

opinion.

> We will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources.

20 C.F.R. § 404.1520c(a).  The regulations list the factors to be utilized in considering

medical opinions:  supportability, consistency, relationship including the length and

purpose of the treatment relationship and frequency of examinations, specialization, and

other factors including familiarity with other evidence in the record or an understanding

of the disability program.  Id. § 404.1520c(c).  The most important of these factors are

supportability and consistency, and the regulation requires the ALJ to explain these

factors, but does not require discussion of the others.  Id. § 404.1520c(b)(2).  The

regulation explains that "[t]he more relevant the medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s) . .

12

. , the more persuasive the medical opinion . . . will be." Id. § 404.1520c(c)(1).  In addition, "[t]he more consistent a medical opinion . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion . . . will be."  Id. § 404.1520c(c)(2).

In his decision, the only opinions that the ALJ found persuasive were those of the state agency physicians, Drs. Chung and Lombard.  Tr. at 21.  This is problematic because both doctors reviewed the record prior to Plaintiff's diagnoses with CRPS.[15]  Id. at 65 (Cr. Chung 5/10/19), 78 (Dr. Lombard 6/26/19), 931 (Dr. Culp diagnosed elements of CRPS 8/1/19).  Thus, both were unaware of the treatment notes from Dr. Culp evidencing the post-surgical restriction in movement of Plaintiff's left thumb, pain, swelling, discoloration, id. at 931 (8/1/19), and Dr. Connor's treatment notes indicating Plaintiff's inability to make a fist with his left hand, discoloration and coolness of the hand, and allodynia.  Id. at 944 (10/24/19).  Keeping in mind that the ALJ relied on Drs. Chung and Lombard to find Plaintiff capable of occasional use of his left hand, the fact that those doctors did not have a complete picture of the medical evidence undermines the ALJ's opinion.

The ALJ found unpersuasive a notation that Plaintiff was "unable to work," which the ALJ attributed to Dr. Culp.  Tr. at 22.  The notation to which the ALJ referred was made by physical therapist Amanda Murphy on December 4, 2018.  Id. at 288.  Dr. Culp opined that Plaintiff's ligament tear of the MP joint was related to his December 27, 2017

---

[15]Dr. Chung reviewed the record a month after Plaintiff's April 19, 2019 ligament reconstruction surgery.

fall at work.  Id. at 1145.  His treatment notes contain examination findings regarding the movement of the thumb, which was limited to 40 degrees in August 2019, id. at 930, and then reduced to 30 degrees the following month.  Id. at 929.

Dr. O'Connor found that Plaintiff had minimal use of his left hand and indicated that he would be unable to return to his "normal job."  Tr. at 945.  The ALJ found this opinion unpersuasive noting that "there is no indication of what occupation(s) Dr. O'Connor contemplated in this assessment."  Id. at 22.  In addition, the ALJ concluded that Dr. O'Connor's assessment was referring to a temporary condition because the doctor referenced that Plaintiff had "not achiev[ed] maximum medical improvement and [had] not yet [been] treated specifically for CRPS."  Id.  The ALJ also concluded that the assessment was not "fully consistent with other examinations in the record."  Id.

The ALJ's consideration of Dr. O'Connor's opinion is flawed for several reasons. First, contrary to the ALJ's conclusion, in the same report that Dr. O'Connor opined that Plaintiff "will likely not be able to return to his normal job," tr. at 945, the doctor noted that Plaintiff was a warehouse associate for Amazon.  Id. at 944.  Second, the ALJ's conclusion that that the doctor was describing a temporary condition is speculative and the ALJ's reliance on varying examination results runs afoul of SSR 03-2p.

> It should be noted that conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved.  Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources.

SSR 03-2p, 2003 WL 22399117, at *5.  The examination results upon which the ALJ relies in finding Dr. O'Connor's assessment unpersuasive, tr. at 22 (citing id. at 411, 427, 439, 441, 449, 944, 947), evidence swelling, reduced range of motion, and other symptoms of CRPS and are consistent with Dr. O'Connor's finding that Plaintiff has minimal use of his left hand.  See id. at 410-11 (11/29/18 – slight swelling of the left wrist, "[e]xtension lag in all fingers with full fist closure, positive Phalen's on the left), 439, 441 (3/22/18 – Dr. Sacco noting "some resolution of his symptoms with the trigger finger injection," but continued difficulty grabbing, pinching, and lifting, no swelling or ecchymosis), 944 (10/24/19 – Dr. O'Connor noting Plaintiff is unable to make a fist, shiny appearance to the skin, cool to the touch, allodynia).[16]  Pursuant to SSR 03-2p, it was incumbent upon the ALJ to contact Plaintiff's treating sources to clarify any perceived conflicts in the evidence.

In short, the ALJ relied on the opinions of the state agency physicians who did not have the benefit of the treatment notes from the doctors who subsequently diagnosed Plaintiff with CRPS.  The ALJ mis-attributed a determination of disability to Dr. Culp, and the examination results that the ALJ claims are inconsistent with Dr. O'Connor's assessment provide support for the conclusion that Plaintiff has more limited use of his left hand.  Rather than relying on conflicts in the medical evidence as the ALJ did, the Ruling that specifically addresses CRPS states that conflicting evidence can be expected

---

[16]The ALJ also cited page 427 (5F/9), which was Dr. Matullo's diagnosis of the trigger thumb.  Tr. at 22 (citing inter alia id. at 429).  Dr. Matullo's examination at that time included positive grind and positive hyperextension of the MP and wrist.  Id. at 429.

in cases involving CRPS and "[c]larification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources." SSR 03-2p, 2003 WL 22399117, at *5.  Therefore, I will remand the case for further consideration of the medical opinion evidence.  Considering that there are no capacity assessments completed by Plaintiff's treating physicians and the timing of Plaintiff's diagnosis of CRPS and the evaluations prepared by the state agency consultants, Defendant may consider recontacting Plaintiff's treating physicians to obtain functional assessments.

Plaintiff also argues that the ALJ failed to properly consider his complaints of pain in determining that he could return to skilled work, as his pain will interfere with the concentration necessary to perform skilled work.  Doc. 11 at 8-9.  Defendant responds that the ALJ's consideration of Plaintiff's complaints of pain is supported by substantial evidence, including notations that Plaintiff declined medication indicated for CRPS nerve pain.  Doc. 14 at 9 (citing tr. at 943, 945).  Because I have determined that the case must be remanded for reconsideration of the medical opinion evidence and such reconsideration may impact the assessment of Plaintiff's complaints of pain and other limitations, I find no reason to address this claim at this point.

## IV.    **<u>CONCLUSION</u>**

The ALJ failed to properly consider the medical opinion evidence, relying on assessments of the state agency consultants who rendered their opinions prior to the Plaintiff's diagnosis with CRPS and misconstruing evidence in considering the opinions of Plaintiff's treating physicians.  Because reconsideration of the medical opinion

16

evidence may affect the consideration of Plaintiff's complaints of pain and their impact on his ability to perform skilled work, I have not addressed the ALJ's consideration of Plaintiff's complaints of pain.

An appropriate Order follows.